[Crim. No. 3208.   Second Appellate District, Division One.—August 3, 1939.]

THE PEOPLE, Respondent, v. ROBERT K. WEST et al., Defendants; IVAN C. RINEHART, Appellant.

Ivan C. Rinehart, *in pro. per.*, for Appellant.

Earl Warren, Attorney-General, and John L. Nourse, Deputy Attorney-General, for Respondent.

WHITE, J.—By respective counts in an information filed against him, appellant was accused jointly with one Robert K. West of two charges of forgery and one charge of grand theft. Appellant admitted the commission of two prior felonies, as alleged in the information, and also admitted the service of penitentiary sentences therefor. Following a jury trial resulting in the conviction of both defendants on all

counts and the pronouncement of judgment, defendant Rinehart alone prosecutes this appeal.

Epitomizing the facts most favorable to the prosecution, as we are required to do when the verdict is against appellant, we find in the record testimony that on the evening of October 31, 1938, appellant and his wife appeared in a radio store in the city of Los Angeles, where they examined two radios of different makes and discussed the relative merits thereof with a salesman, George Myers. Appellant favored one type of radio, while his wife preferred the other model. After about an hour's discussion with the salesman, appellant and his wife departed, appellant remarking, ''We always think it over and we will let you know.'' On the afternoon of November 5, about 2 o'clock, appellant reappeared at the radio store, at this time accompanied by his codefendant, West, whom he introduced to the salesman as his brother-in-law. There was further discussion concerning the two radios, and the salesman finally offered to sell either machine for $213, with a down payment of $75. Appellant requested that both radios be sent to his home on approval, so that his wife might have a further opportunity to compare the two models. He suggested that delivery be made at 8 o'clock that evening, but the salesman objected, saying that it was impossible to make delivery after 5 o'clock that afternoon. Both defendants then left the store for the ostensible purpose of communicating with appellant's wife regarding the possibility of accepting delivery at an earlier hour. The evidence indicates, however, that they proceeded to 2048 West Seventy-fourth Street in Los Angeles, arriving there about 4 o'clock in the afternoon. They had previously inspected the house next door, at 2042 West Seventy-fourth Street, with a view toward renting the premises. On that occasion they met Miss Barbara Mae Crawford at the first-named address and told her they desired to rent the last-mentioned house immediately. Miss Crawford explained that she had no authority to rent the house, and that her mother was in complete charge of such matters. Appellant, however, represented that they had some furniture in storage which had to be out by 5 o'clock, and prevailed upon the daughter to rent the house immediately, subject to her mother's approval. Appellant thereupon, in the presence of Miss Crawford, wrote out the check described in count III,

signing thereto the fictitious name "E. A. Mason", and handed the check to her.

Having obtained possession of the key, appellant called Mr. Myers, the radio salesman, on the telephone, and directed him to send the radios to 2042 West Seventy-fourth Street. In response to a question by the radio salesman, appellant represented that he owned the furniture at the last-named address, which house he had rented completely furnished. In addition, appellant promised to make the agreed down payment that day; to sign a contract for the payment of the balance of the purchase price on the following Monday, and to return one of the radios at the same time. The radios were delivered at the Seventy-fourth Street address between 4:30 and 5 o'clock on Saturday afternoon. Appellant was not present when the delivery was made, but his codefendant accepted the radios, signing the delivery slip with the name "B. Raleigh". The same defendant also handed to Sam Slyman, one of the deliverymen who made the delivery for the radio firm, a check in the sum of $75, bearing the fictitious signature "E. A. Mason". Count II of the information is based upon the issuance of this check.

Shortly thereafter appellant returned to the house. Between 5:30 and 6 o'clock the defendants had some conversation with Mrs. A. S. Crawford, mother of Miss Barbara Mae Crawford, regarding the rental of the premises. About 6 o'clock they loaded the radios into an automobile belonging to defendant West and took one of the radios to appellant's home, delivering the other to defendant West's home. Appellant was arrested November 17th, and his codefendant, West, was taken into custody the following day. One of the radios was found in West's home and the other in his garage.

Appellant offered no evidence in his defense, nor did he himself take the witness stand to deny any of the foregoing facts, many of which were established by the testimony of his codefendant when the latter was a witness in his own behalf.

Appellant first urges the point that in permitting the single information to charge him with both the crimes of grand theft and forgery, the trial court committed error which was prejudicial to the substantial rights of appellant and violative of the provisions of section 954 of the Penal Code. This claim is without merit. The cited section authorizes the charging of two or more different offenses in the same

information when the different offenses are "connected together in their commission". The evidence herein narrated clearly and conclusively shows not only that the three offenses charged were closely connected in their commission, but that the fictitious checks constituting the forgery charges were issued to facilitate the commission of the grand theft. (*People* v. *Holmes,* 130 Cal. App. 507, 509 [20 Pac. (2d) 67].) The three counts were properly joined. The case of *People* v. *Frank,* 130 Cal. App. 212 [19 Pac. (2d) 850], relied upon by appellant, has no application to the facts of the instant case.

It is next contended by appellant that the evidence is insufficient to support the guilty verdicts for the reason that the record is barren of any evidence to show that appellant either signed or uttered any of the checks. Recourse to the record, however, indicates that the witness Barbara Mae Crawford testified positively and directly that appellant in her presence wrote, signed and delivered to her one of the checks. Her testimony in this regard was corroborated by appellant's codefendant; and a handwriting expert, whose qualifications were stipulated, testified that in his opinion both checks were written by the same hand. Appellant did not himself deny, or offer any testimony in contravention of, the foregoing.

Appellant also urges insufficiency of the evidence for the reason, as stated by him, "No evidence has been introduced by the prosecution to establish venue." This claim is untenable. For example, there is evidence that both checks were drawn on a Los Angeles city bank; that one of them was written in that city; that the radio store was located in the same city; and these were all circumstances not to be ignored. Without going into further detail, suffice it to say that the evidence unerringly and logically points to the single inference that the crimes were committed in Los Angeles County. Under the facts of this case the jury were justified in concluding, as jurors, what they well knew as men and women, that the streets named by some of the witnesses meant certain well known and so named streets in the City of and County of Los Angeles. (*People* v. *McGregar,* 88 Cal. 140, 143 [26 Pac. 97].) Furthermore, as was said by this court in *People* v. *Carter,* 10 Cal. App. (2d) 387, 389 [52 Pac. (2d) 294], "The state gives no assurance to its feloniously insubordinate citizens that the venue of their crimes will be fixed

beyond a reasonable doubt; that doctrine applies only to the issue of guilt. (*People* v. *McGill,* 10 Cal. App. (2d) 155 [51 Pac. (2d) 433]; Underhill on Criminal Evidence, vol. 1, sec. 36, p. 45.) The defendant and appellant, therefore, is in no position to complain because the location of the offense was not established to a degree of certainty more to his liking.''

Appellant next asserts that since one of the checks was not presented for payment and that no damage or injury resulted from its issuance, that the crime of forgery predicated upon such check was not proven. In a prosecution for forgery it is not required that actual damage ensue; it is sufficient to show, as was done in the case at bar, that the instrument was prepared with the intent to deceive and defraud another. (*People* v. *Turner,* 113 Cal. 278 [45 Pac. 331]; *People* v. *Baender,* 68 Cal. App. 49, 59 [228 Pac. 536]; *People* v. *Kuhn,* 33 Cal. App. 319 [165 Pac. 26].) In *Henderson* v. *State,* 14 Tex. 503, it was said:

''The intent to defraud, it is true, is of the essence of the crime. But it is not essential that any person be actually defrauded, or that any act be done toward the attainment of the fruits of the crime other than the making of the instrument. And the very fact of the forgery itself will be sufficient to imply an intention to defraud; or at least it will be sufficient if, from the circumstances of the case, the jury can fairly infer that it was the intention of the party to utter the forged instrument (3 Greenleaf on Evidence, sec. 103; 3 Archibald on Criminal Pleading, 546; 2 Russell on Crimes, 361 [7th Am. from 3d London ed.]), and *a fortiori* if, as in this case, there is proof that he did utter it. It is well settled, it is true, as held in a case cited by counsel (*People* v. *Shall,* 9 Cow. (N. Y.) 788), that the foregoing of an instrument which on its face is void is not indictable. But that is not this case. The deed on its face appears to be a valid, legal conveyance of land. And it is sufficient that it is such a character of instrument that the consequences of the forgery would necessarily or possibly be to defraud some person. It is sufficient if it appear that by possibility either the state or some person might be defrauded. (Act above cited; 3 Greenleaf on Evidence, sec. 103; 2 Russell on Crimes, 361, note; 2 N. J. 212.)''

That the spurious checks here in question did actually deceive George Myers, the radio salesman, and Barbara Mae

Crawford, who rented to appellant and his codefendant the house to which delivery of the radios was made, is obvious.

Finally, appellant earnestly insists that the court committed prejudicial error during the trial of the case by admitting in evidence certain statements and confessions purported to have been made to one of the police officers by appellant; the objection being that they were not freely and voluntarily made. The record indicates that appellant made two statements to the officers. On the first occasion appellant stated that he knew why he had been arrested and that he knew where the radios were; but he declined to say where the radios could be found. The second conversation took place in the presence of appellant, his wife, and the officer, at which time the officer threatened to arrest appellant's wife as an accomplice unless appellant agreed to disclose where the property could be found. Thereupon appellant furnished the requested information. There is no claim of any threat or intimidation at the time appellant made the first and only really incriminating statement to the effect that he was aware of the reason for his arrest and that he had knowledge of the location of the stolen property. In connection with the second statement, if there be any doubt as to the voluntary nature thereof, the conversation was nevertheless properly admitted. Whatever of an incriminatory nature there might be in the last made statement to the officer, nowhere in it did appellant admit that he either stole the radios or issued or uttered the fictitious checks in question. A statement or an admission which amounts to less than a confession is admissible without the necessity of showing the absence of promises, inducements or coercion. (*People* v. *Leroy*, 65 Cal. 613 [4 Pac. 649]; *People* v. *Johnson*, 203 Cal. 153, 164 [263 Pac. 524].) Where, as here, appellant admitted facts that did not amount to a confession, but which when connected with other facts tended to prove his guilt, the rule is not altered. Proof of such admissions is competent without preliminary proof. (*People* v. *Ammerman*, 118 Cal. 23, 32 [50 Pac. 15].)

The judgment is affirmed.

York, P. J., and Doran, J., concurred.